```
                    United States District Court
                      District of Massachusetts
```

|                                          |   |                    |
|------------------------------------------|---|--------------------|
| SIRVA RELOCATION, LLC and AETNA LIFE INSURANCE COMPANY, | ) ) ) ) |                    |
| Plaintiffs,                              | ) ) | Civil Action No.   |
| v.                                       | ) ) | 13-12530-NMG       |
| JULIAN T. TYNES, SUNILA THOMAS-GEORGE and JAMIE R. WILLIAMSON, in their official capacities as COMMISSIONERS OF THE MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, COMMONWEALTH OF MASSACHUSETTS and DAVID KNIGHT, | ) ) ) ) ) ) ) ) ) ) |                    |
| Defendants.                              | ) ) |                    |

**MEMORANDUM & ORDER**

**GORTON, J.**

In this case, the Court is asked to decide a long-running dispute in which employee David Knight ("Knight") alleges disability discrimination by his employer Sirva Relocation, LLC ("Sirva") and its insurance provider Aetna Life Insurance Company ("Aetna") (collectively, "plaintiffs"). Knight filed his original complaint against Sirva with the Massachusetts Commission Against Discrimination ("MCAD") in 2007, alleging discrimination on the basis of the termination of benefits for his claimed mental disability. Since then, MCAD has intermittently investigated Knight's case. Plaintiffs, in

-1-

their initial response and ever since, maintain that Knight's claim is preempted by the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and, accordingly, does not belong in a Massachusetts state administrative tribunal.

In October, 2013, troubled by the MCAD's prolonged failure to address what it sees as a clear case of statutory preemption, plaintiffs filed a complaint and motion for preliminary injunction in this federal court seeking redress. Pending before the Court are plaintiffs' motion for a preliminary injunction declaring that Knight's claims are preempted and a permanent injunction barring MCAD from any further investigation or proceedings and the defendants' motions to dismiss plaintiffs' claims.

## I. Background

### A. Factual Background

Plaintiff Sirva is a company that provides a range of services related to moving and housing. It provides various benefits to its employees, including long-term disability benefits through a policy issued and administered by Aetna. Relevant here, the policy had no time limits for physical disabilities but provided for only 24 months of benefits for certain mental disorders, namely any disability caused by a

condition that is not a medically determinable physical impairment.

Knight was a Sirva employee who, in November, 2004, stopped working at Sirva because of a mental disorder and began receiving long-term disability benefits. In December, 2006, after 24 months, Aetna informed Knight that his disability benefits had terminated effective November 30, 2006, pursuant to the terms of Aetna's plan.

**B.   Procedural History**

In September, 2007, Knight filed a Charge of Discrimination with MCAD alleging that Aetna's plan violates M.G.L., c. 151B, § 4, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., by unlawfully differentiating between mental and physical disabilities. Shortly thereafter, plaintiffs moved to dismiss, arguing that any claim related to Knight's benefits plan while working at Sirva was preempted by ERISA. In April, 2010, more than two years later, MCAD Commissioner Sunila Thomas-George ("Commissioner Thomas-George") issued a short ruling denying plaintiffs' motion without prejudice. The ruling acknowledged that any determination of the legality of an employee benefit plan would be preempted by ERISA but denied the motion on the grounds that MCAD could not yet determine whether the subject plan is, in fact, an "employee benefit plan" under ERISA.

MCAD took no further action until April, 2012, when an MCAD investigator issued Requests for Information to Aetna and Sirva focusing on all of the factual allegations at issue in Knight's complaint. The Requests were not limited to the ERISA preemption issue. In October, 2012, five years after Knight filed his initial complaint with MCAD, Commissioner Thomas-George issued a Probable Cause Finding indicating that MCAD found probable cause to credit Knight's allegations. Because the finding did not squarely address the ERISA preemption issue, plaintiffs moved for reconsideration which was denied.

MCAD subsequently issued a discovery order and set a "public hearing," MCAD's version of a trial, for January, 2014. At the public hearing, MCAD's commissioners planned to hear evidence on all material issues of fact, including the issue of ERISA preemption.

On October 8, 2013, frustrated with the pace of the proceedings and doubtful that they would receive a full and fair opportunity to assert their ERISA preemption argument in the MCAD proceeding, plaintiffs filed a complaint and motion for preliminary injunction in this Court.[1] Because of plaintiffs' complaint, the January, 2014, MCAD public hearing was stayed. After a brief extension of time, MCAD and Knight each separately

---

[1] Knight is named as an "interested party" only and plaintiffs seek no relief from him.

filed motions to dismiss and oppositions to plaintiffs' motion, both arguing that the Court should abstain from hearing plaintiffs' claim under Younger v. Harris. 401 U.S. 37 (1971).

On December 10, 2013, in an unrelated but significant development, the Supreme Court issued a unanimous opinion in Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584 (2013), which addressed the scope of Younger abstention.  Perceiving the potential impact of this late development, the Court directed both parties to file supplemental briefs with respect to the impact of the Sprint decision on the subject motions prior to the motion hearing.

On December 19, 2013, the Court held a hearing on the pending motions.  Thereafter, first in February and then in March, 2014, plaintiffs filed notices to alert the Court to recent judicial opinions relevant to the issues raised in this case.  Defendants filed memoranda in opposition in both instances.

## II. **Legal Analysis**

This case turns on two issues: (1) whether the Court must abstain under the newly clarified Younger doctrine and (2) whether, even if Younger abstention applies to the subject MCAD proceeding, the Court can nevertheless exercise jurisdiction because it is "facially conclusive" that defendants' claims are preempted by ERISA.

### A. Younger Abstention

#### 1. Legal Standard

Recognizing the tensions inherent in parallel judicial processes at the state and federal levels, the Supreme Court has outlined situations where the possibility of "undue interference" with state judicial proceedings cautions restraint by federal courts. Sprint, 134 S. Ct. at 588. Younger initially invoked this rationale to abstain from enjoining an ongoing state criminal prosecution. 401 U.S. at 43-44. The Court subsequently extended Younger's logic to those state civil proceedings that are akin to criminal prosecutions in "important respects," see Huffman v. Pursue, Ltd., 420 U.S. 592 (1975), and those that concern the orders and judgments of state courts, see Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987) (enforcing requirement to post bond pending appeal); Juidice v. Vail, 430 U.S. 327 (1977) (enforcing civil contempt order). The high Court later described those categories as the three "exceptional circumstances [that] justify a federal court's refusal to decide a case in deference to the States." New Orleans Pub. Serv., Inc. v. City of New Orleans ("NOPSI"), 491 U.S. 350, 368 (1989).

Other language from the Supreme Court, however, has indicated that Younger reaches somewhat farther than NOPSI would suggest. In 1982, the Court noted that the question of

-6-

abstention under Younger for quasi-judicial proceedings should focus on

> whether important state interests are implicated so as to warrant federal-court abstention and whether the federal plaintiff has an adequate opportunity to present the federal challenge.

Middlesex County Ethics Comm. v. Garden State Bar Assn., 457 U.S. 423, 434 (1982). Lower courts subsequently used this language as the test for Younger abstention, broadening the scope of the doctrine. See, e.g., Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 638-39 (1st Cir. 1996).

In Sprint, however, the high Court dispelled any notion of a broader Younger abstention doctrine. Rejecting a lower court's abstention in a dispute involving utility rates, the Court expressly clarified that "Younger extends to the three 'exceptional circumstances' identified in NOPSI, but no further." Sprint, 134 S. Ct. at 594.

While the categories of criminal prosecutions and proceedings to enforce a state court judgment are straightforward, civil enforcement proceedings under Younger abstention are less clear, defined by whether they are "akin to" criminal prosecutions in "important respects." See Huffman, 420 U.S. at 604. A civil enforcement proceeding

> initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act,

warrants abstention under Younger. Sprint, 134 S. Ct. at 592. In such cases, a state actor is "routinely" a party to the proceedings, investigations are "commonly involved" and formal charges are often filed. Id.

Although the Sprint Court rejected a central role for the three Middlesex factors because they "would extend Younger to virtually all parallel state and federal proceedings," it noted that, in the context of determining whether abstention was warranted in a civil enforcement proceeding, they were "*additional* factors appropriately considered by the federal court before invoking Younger." Id. at 593. Accordingly, in determining whether abstention is warranted for a civil enforcement proceeding, a court should also consider (1) whether there is an ongoing state proceeding that is judicial in nature, (2) the importance of the state interest involved and (3) whether the federal plaintiff has an adequate opportunity to raise the federal issue in the state proceeding. See Gonzalez v. Waterfront Comm'n of New York Harbor, No. 13-2023, 2014 WL 2724127, at *6-7 (3d Cir. June 17, 2014) ("The fact that the state proceeding was quasi-criminal in nature, however, does not end our inquiry, as we must also consider whether the three Middlesex factors are satisfied.").

## 2. Application

With the scope of Younger abstention thus clarified, the Court can now address the facts at hand. The subject MCAD proceeding is not a criminal prosecution or a proceeding to effectuate the work of state courts. It is an open question, however, whether it qualifies as a civil enforcement proceeding.

Plaintiffs label the MCAD proceeding "a private action brought by an allegedly aggrieved private citizen in an administrative proceeding" and argue that Younger abstention would be inappropriate. Defendants respond that while defendant Knight filed the initial complaint, MCAD has subsequently investigated plaintiffs under its own authority and the state proceeding is a civil enforcement proceeding under Younger.

The Court concludes that the subject proceeding is a civil enforcement proceeding under Younger akin to a criminal prosecution in important respects. Although Knight initiated the action by filing a complaint with MCAD, initiation by a private party is not a per se rule rendering the action a private dispute. See Sprint, 134 S. Ct. at 592 (noting that a state actor "often initiates the action") (emphasis added). Here, MCAD is a party to the state proceedings and is named as a defendant in plaintiffs' federal complaint. See id. (emphasizing that in civil enforcement proceedings a "state actor is routinely a party to the state proceedings"); see also Joule,

Inc. v. Simmons, 459 N.E.2d 143, 148 (Mass. 2011) (noting that regardless of how a proceeding is initiated, MCAD "proceeds in its own name").

MCAD has also conducted an independent investigation into the facts of this case and filed a formal complaint on its own behalf. Cf. Sprint, 134 S. Ct. at 592 (describing how Younger's second category is not met where "[n]o state authority conducted an investigation...and no state actor lodged a formal complaint"); see also Joule, 459 N.E.2d at 148 ("MCAD has the power to investigate claims of discrimination on its own, but also has the authority – and generally follows this course – to investigate and pursue complaints filed by individuals.").

Moreover, the Supreme Court has previously addressed a situation quite similar to that presently before this Court in Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., where it found an administrative proceeding to enforce state civil rights laws warranted abstention under Younger. 477 U.S. 619, 628 (1986). Indeed, despite the fact that, in Dayton, a private party filed the initial complaint which led to a subsequent investigation by the Ohio Civil Rights Commission, id. at 623-24, the Sprint Court characterized Dayton as a "state-initiated administrative proceeding[] to enforce state civil rights laws." Sprint, 134 S. Ct. at 592 (emphasis added). The Supreme Court's specific reference to Dayton makes clear

that the mere fact that a private party brings a case of alleged discrimination to the attention of state officials does not render a subsequent state investigation and enforcement proceeding a "private" action. Accordingly, despite the absence of an exact criminal law analogue, the Court finds that the subject MCAD proceeding is "more akin to a criminal prosecution than are most civil cases." Id. (quoting Huffman, 420 U.S. at 604).

To the extent the Supreme Court intended the three Middlesex factors to play a role in Younger abstention after Sprint, those factors support the Court's finding in this case. The subject MCAD proceeding is undoubtedly a "quasi-judicial proceeding" and eliminating discrimination is an important state interest. See Dayton, 477 U.S. at 628.

With respect to the third Middlesex factor, plaintiffs contend that this Court should refuse to abstain because MCAD has shown that it will not allow their ERISA preemption claim to be heard. Plaintiffs' impatience is understandable given the significant and unexplained delays in this case, but there is a difference, dispositive here, between failing to decide an issue promptly and not giving a party an opportunity to raise a defense. See Kelm v. Hyatt, 44 F.3d 415, 424-25 (6th Cir. 1995) (rejecting claim that delay denies a plaintiff "an adequate

opportunity for review and redress"). In this case, the Court finds only that the former has occurred.

Even assuming, contrary to the facts before the Court, that plaintiffs will be unable to raise the defense of ERISA preemption before MCAD, Middlesex established that it is sufficient "that constitutional claims may be raised in state-court judicial review of the administrative proceeding." Dayton, 477 U.S. at 629. Here, absent any evidence that the Massachusetts judicial system is unfairly biased against the plaintiffs or that MCAD is engaged in bad faith harassment, Middlesex, 457 U.S. at 435, plaintiffs will have an adequate opportunity to raise their ERISA defense in the state proceeding. See Bd. of Locomotive Eng'rs v. Mass. Comm'n Against Discrimination, 695 F. Supp. 1321, 1323 (D. Mass. 1988) ("[I]t cannot be doubted that the courts of the Commonwealth, in reviewing any decision of [MCAD], will give federal constitutional issues, including preemption, the closest scrutiny.").

Accordingly, the Court finds that the subject MCAD proceeding is a civil enforcement proceeding sufficiently akin to a criminal prosecution in important respects such that Younger abstention applies.

**B.  Facially Conclusive Preemption**

**1.  Legal Standard**

Even when the prerequisites of Younger abstention are met, the First Circuit has recognized an exception for cases where preemption of state law by a federal statute is "facially conclusive." See Colonial Life & Acc. Ins. Co. v. Medley, 572 F.3d 22, 26 (1st Cir. 2009) (citing Chaulk Servs., Inc. v. Massachusetts Comm'n Against Discrimination, 70 F.3d 1361, 1370 (1st Cir. 1995)).  Although the exception has not been definitively outlined, "courts have largely defined the term 'facially conclusive' by rejecting that which it is not." Id. at 27.  Accordingly, courts deem insufficiently conclusive those cases where a mere "substantial" claim of preemption is demonstrated, where further factual inquiry is required or where the preemption issue is a matter of first impression. See id.[2]

Two preemption matters are potentially at issue here: (1) the subject plan's status as an "employee benefits plan" under ERISA and (2) whether the ADA prohibits discrimination in the provision of benefits to persons with mental disabilities. While the parties dispute the status of the subject plan, the Court need not decide whether that issue is facially conclusive because it finds the latter inquiry dispositive.

---

[2] The Court finds no indication that Sprint looked askance upon this longstanding exception within the First Circuit.

### 2. Application

Plaintiffs assert that it is obvious that the subject benefits plan does not discriminate under the ADA. Specifically, they point to the nearly unanimous support among Courts of Appeals for the proposition that it is valid under the ADA for an employer to provide unlimited benefits for physical disabilities but time-limited benefits for mental disabilities. Defendants counter that the dispositive data point is the division of authority within the First Circuit Court of Appeals, in which several district courts have reached opposite conclusions in the absence of definitive appellate guidance.

State anti-discrimination laws are only preempted insofar as they prohibit conduct not prohibited under federal law. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 102-03 (1983). In other words, if the ADA prohibits certain conduct, state law claims based on that conduct are not preempted. Accordingly, this Court must determine whether it is "facially conclusive" that a policy violates the ADA by providing unlimited benefits for physical disabilities and time-limited benefits for mental disabilities.

While plaintiffs persuasively point to the vast majority of circuit courts which affirm that benefit plan distinctions between mental and physical conditions are valid under the ADA, they also acknowledge that

> [t]here is a division on this issue among the District Court judges in this Circuit that have ruled on the issue.

Compare Witham v. Brigham & Women's Hosp., Inc., 2001 WL 586717 (D.N.H. May 31, 2001) (finding such distinctions valid), with Iwata v. Intel Corp., 349 F. Supp. 2d 135 (D. Mass. 2004) ("[T]he ADA prohibits discrimination amongst classes of the disabled."). Moreover, although the First Circuit has explicitly recognized this issue as an open question, it has left the issue unresolved. See Colonial Life, 572 F.3d at 27 ("We have not had occasion to decide whether the ADA prohibits as discriminatory an employer's decision to provide short-term disability benefits to individuals with physical disabilities, but not to those with mental disabilities.").

In the end, plaintiffs' argument amounts to a dressed up version of "everybody's doing it"; perhaps persuasive authority to some but far from rendering a determination of this issue "facially conclusive." See id. at 28-29 (stating that "the existence of a question of first impression regarding the ADA's applicability...precludes preemption from being facially conclusive"). Accordingly, the Court finds no exception to Younger abstention applicable to this case.[3]

---

[3] Because the Court concludes that it must abstain, it declines to decide whether plaintiffs satisfy the requirements for a preliminary injunction.

### III. Conclusion

Plaintiffs' exasperation with MCAD is well-founded and understandable based on the record before this Court. Indeed, it is hard to avoid the conclusion that MCAD could easily have reached the ERISA preemption issue, almost certainly dispositive, years ago, thus sparing everyone unnecessary litigation and concomitant delay and expense. Nonetheless, the principles of comity and federalism undergirding <u>Younger</u> abstention dictate that this Court tread carefully around the MCAD proceedings. Therefore, the Court will abstain from exercising jurisdiction in this case.

### ORDER

In accordance with the foregoing, plaintiffs' motion for a preliminary injunction (Docket No. 2) is **DENIED**, defendants' motions to dismiss (Docket Nos. 24 & 26) are **ALLOWED** and the case is **DISMISSED.**

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated August 7, 2014